UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN LAND,

               Plaintiff,

      v.

KRISTIN M. SALOTTI, JESSICA B. BURNETT,
KAREN RINERE, RN YOUNG, OFFICER JOHN DOE,
NURSE JANE DOE, LUCI WILSON, and
MARY J. COLEMAN,

               Defendants.
_____

**DECISION AND ORDER**

6:18-CV-06516 EAW

## INTRODUCTION

*Pro se* plaintiff John Land ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against Kristin M. Salotti, Jessica B. Burnett, Karen Rinere, RN Young, Officer John Doe, Nurse Jane Doe, Luci Wilson, and Mary J. Coleman, asserting deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Dkt. 6). RN Young and the Doe defendants have never been served and have not appeared in this action. The appearing defendants— Kristin M. Salotti, Jessica B. Burnett, Karen Rinere, Luci Wilson, and Mary J. Coleman (collectively "Defendants")—have moved for summary judgment. (Dkt. 68). For the following reasons, Defendants' motion is granted.

## FACTUAL BACKGROUND

### I.    Sources of Undisputed Facts

Rule 56(a)(2) of the Local Rules of Civil Procedure for the Western District of New York instructs parties opposing summary judgment to "include a response to each

numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried." Loc. R. Civ. P. 56(a)(2) (emphasis omitted). On September 20, 2023, the Court warned Plaintiff that if he failed to file the required response, "all material facts set forth in Defendants' statement of material facts not in dispute will be deemed admitted." (Dkt. 69 at 2).

Despite responding to Defendants' motion for summary judgment, Plaintiff did not file a statement of undisputed material facts. But considering Plaintiff's *pro se* status, the Court in its discretion has conducted an independent review of the record to ascertain whether disputes of material fact exist that would preclude summary judgment in favor of Defendants. *See Daley v. Cablevision Sys. Corp.*, No. 12-cv-6316 (NSR), 2016 WL 880203, at *1 (S.D.N.Y. Mar. 7, 2016), *aff'd*, 675 F. App'x 97 (2d Cir. 2017). When a court independently reviews the record, it "may treat [a plaintiff's] verified complaint[1] as an affidavit for summary judgment purposes." *Curtis v. Cenlar FSB*, 654 F. App'x 17, 20 (2d Cir. 2016); *see Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) ("It is true that a verified complaint may serve as an affidavit for summary judgment purposes. . . ."). Accordingly, the Court therefore treats the facts set forth in Defendants' Rule 56 statement "admitted for the purposes of" the instant motion where supported by

---

[1] In this case, Plaintiff signed and filed his verified amended complaint under penalty of perjury. (Dkt. 6 at 8). The Court has also considered Plaintiff's Rule 26 disclosures, which are sworn to under penalty of perjury. (Dkt. 19).

admissible evidence in the record and otherwise not contradicted by the evidence therein. Loc. R. Civ. P. 56(a)(2); *see N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs. Inc.*, 426 F.3d 640, 648 (2d Cir. 2005).

## II.     Undisputed Facts

In 2013, Plaintiff had surgery to fix a torn meniscus in his right knee. (*See* Dkt. 19-1 at 19). A few years later, on June 17, 2015, Plaintiff established care with Whitney Young Health, and he reported that he experienced occasional pain in his right knee and that the knee would sometimes lock up and give out. (*Id.*). Dorothy Gilbertson, RPA-C, prescribed Plaintiff a large, metal-hinged knee brace. (*Id.* at 21). But in August 2015, Plaintiff was involved in a motor vehicle accident "which resulted in knee, hip and lower back pain." (*Id.* at 23; *see* Dkt. 6 at ¶ 11; Dkt. 68-3, Ex. A at 17-19). After the accident, Plaintiff began wearing a back brace. (*See* Dkt. 19-1 at 15, 17; Dkt. 68-3, Ex. A at 20).

On March 24, 2016, Plaintiff was incarcerated at Downstate Correctional Facility ("Downstate"). (Dkt. 6 at ¶ 16). Plaintiff received a knee brace, a back brace, and pain medication at Downstate. (*Id.*; *see* Dkt. 19-1 at 39). In April, Plaintiff was transferred to Sing Sing Correctional Facility ("Sing Sing"). (Dkt. 6 at ¶ 17). Plaintiff continued to receive various forms of treatment for his knee and back at Sing Sing. (*Id.*; *see* Dkt. 19-1 at 40-41; Dkt. 19-2 at 42). Plaintiff's treatment included an x-ray of his right knee, which "show[ed] no fracture, dislocation, joint effusion or arthritic change." (Dkt. 19-1 at 43). Plaintiff was then transferred to Five Points Correctional Facility ("Five Points") on or around July 21, 2016. (Dkt. 6 at ¶ 18).

When Plaintiff arrived at Five Points, Defendant Officer John Doe confiscated Plaintiff's braces and told Plaintiff that the devices would need to be re-issued by the facility's medical department. (*Id.* at ¶ 19; *see* Dkt. 68-3, Ex. A at 24). On July 22, 2016, Defendant Jane Doe, who had an in-person appointment with Plaintiff, denied his verbal requests for: (1) the return of his knee and back braces; (2) pain medication; and (3) a bottom bunk permit. (*See* Dkt. 6 at ¶ 20). That same day, Defendant Kristin M. Salotti issued a written progress note in which she indicated that Plaintiff would be required to relinquish his back and knee braces because long-term use thereof would be harmful and unnecessary, and ordered a 30-day supply of the pain medication Naprosyn. (Dkt. 19-1 at 45).

In August and September, Plaintiff made several written requests through the sick call system for his knee brace, his back brace, and a bottom bunk permit. (*See* Dkt. 6 at ¶ 21; Dkt. 19-1 at 46-48; Dkt. 68-3, Ex. A at 25-26). Defendants Karen Rinere, RN Young, and Jessica B. Burnett responded to Plaintiff's requests. (*See* Dkt. 6 at ¶¶ 22-24; Dkt. 19-2 at 15-17). Rinere and Young confirmed Salotti's previous determinations (*see* Dkt. 19-1 at 15-16), and Burnett informed Plaintiff that he would be personally examined by Salotti "very soon" to evaluate his right knee (*see id.* at 17).

Salotti evaluated Plaintiff and determined that there was no medical need for a large, metal-hinged knee brace or a back brace, but Salotti did issue Plaintiff a bottom bunk

permit. (*See* Dkt. 6 at ¶ 25; Dkt. 19-2 at 44; Dkt. 68-2 at ¶ 25; Dkt. 68-3 at ¶ 24).[2] Plaintiff filed a grievance regarding the denial of his braces on December 9, 2016 (*see* Dkt. 19-2 at 59), and on January 2, 2017, he wrote a letter addressed to a "Nurse Administrator," requesting information as to why his braces were denied (*see id.* at 18; Dkt. 6 at ¶ 25). Plaintiff received responses from the Inmate Grievance Resolution Committee ("IGRC") of the New York State Department of Corrections and Community Supervision ("DOCCS") and Burnett on January 9 and January 10, 2017, respectively. (*See* Dkt. 19-2 at 19, 59). Plaintiff saw Salotti again on February 6, and she ordered an MRI of his right knee. (*See* Dkt. 19-1 at 54; Dkt. 68-2 at ¶ 26; Dkt. 68-3 at ¶ 25). Plaintiff's MRI on February 23 showed a "[s]light thickening of the iliotibial band" that appeared to "be related to [a] prior injury," but there was no "significant edema about [the band] to suggest [any] acute abnormalit[ies]." (Dkt. 19-1 at 55; *see* Dkt. 68-2 at ¶ 26; Dkt. 68-3 at ¶ 25).

On April 9, 2017, Plaintiff's right knee gave out and he fell into the shower, sustaining injuries to his left shoulder and, possibly, his head. (*See* Dkt. 6 at ¶ 27; Dkt. 68-3, Ex. A at 46). Plaintiff reported to sick call on April 11, and Nurse Jane Doe told Plaintiff that he would be examined by a provider. (*See* Dkt. 6 at ¶ 28; Dkt. 19-1 at 56). Salotti examined Plaintiff the same day, and she prescribed Plaintiff pain medication and scheduled an x-ray for his left shoulder. (*See* Dkt. 6 at ¶¶ 29-30; Dkt. 19-2 at 21).

---

[2]    Plaintiff asserted in his verified amended complaint that Salotti denied him a bottom bunk permit (*see* Dkt. 6 at ¶ 25), but his own sworn Rule 26 disclosures contain a copy of the bottom bunk permit issued by Salotti (*see* Dkt. 19-2 at 44).

Plaintiff's x-ray on April 19 showed "no fracture, dislocation or arthritic change." (Dkt. 19-1 at 58; *see* Dkt. 6 at ¶ 31; Dkt. 68-2 at ¶ 36; Dkt. 68-3 at ¶ 33).

Plaintiff continued to complain of shoulder pain and was prescribed physical therapy. (*See* Dkt. 19-1 at 59-68; Dkt. 68-2 at ¶ 37; Dkt. 68-3 at ¶ 34). On November 17, 2017, Plaintiff had an MRI that showed a tear in his left shoulder, and as a result, Plaintiff underwent arthroscopic surgery on February 5, 2018. (*See* Dkt. 6 at ¶¶ 32-34; Dkt. 19-1 at 3, 71; Dkt. 68-2 at ¶¶ 38-39; Dkt. 68-3 at ¶¶ 35-36). After the surgery, on February 22, Kevin J. Setter, M.D., prescribed Plaintiff physical therapy. (Dkt. 19-1 at 82; *see* Dkt. 6 at ¶ 35).

On March 1, 2018, Plaintiff wrote a letter to Salotti and requested that he undergo the physical therapy that he had been prescribed by Dr. Setter. (Dkt. 19-2 at 37; *see* Dkt. 6 at ¶ 36). Four days later, on March 5, Plaintiff sent a similar letter directly to the IGRC. (Dkt. 19-2 at 38; *see* Dkt. 6 at ¶ 36). Then, "[a]pproximately thirty-six days" after his surgery, Plaintiff began receiving "the necessary physical therapy" for his left shoulder. (*See* Dkt. 6 at ¶¶ 36-38). Plaintiff claims that corrections officers at Five Points thereafter failed, on occasion, to take him to his scheduled physical therapy appointments. (*See* Dkt. 68-2 at 53-54).

Plaintiff also complained of migraine headaches while at Five Points. He was prescribed medication by Salotti for this condition. (*See* Dkt 68-2 at 79-80). In June 2018, Salotti ordered an MRI of his brain, which showed "no evident abnormality." (Dkt. 68-2 at 15-16).

**DISCUSSION**

I. **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks and citation omitted). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly &*

*Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

**II.     Analysis**

Defendants advance two arguments for summary judgment in their favor on Plaintiff's claim of deliberate indifference to serious medical needs, thereby subjecting Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.[3]  First, they argue that Plaintiff has failed "to prove the personal involvement of Defendants Wilson, Coleman, Burnett, or Rinere."  (*See* Dkt. 68-4 at 5-7).  Second, they argue that the evidence in the record "fails to give rise to a dispute of material fact as to whether any Defendant acted with deliberate indifference to [P]laintiff's serious medical needs."  (*See id.* at 7-11).  The Court agrees that Defendants ultimately are entitled to summary judgment.

---

[3]     In their reply, Defendants assert that their motion for summary judgment should be deemed unopposed because "Plaintiff filed his opposition papers 22 days late despite receiving a significant extension of time to respond to Defendants' motion." (*See* Dkt. 74-1 at 2).  But even if Plaintiff had not filed a response at all, Defendants still would have the burden of showing that they are entitled to summary judgment.  *See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  Because Defendants do not explain how they might be prejudiced otherwise, the Court declines to consider their motion for summary judgment unopposed.  *See Azor v. N.Y.C. Dep't of Corr.*, No. 10 Civ. 2235(PAC)(KNF), 2012 WL 4809165, at *3 (S.D.N.Y. Oct. 9, 2012) ("While Rule 56 does not obligate a court to perform an independent review of the record where a party does not adequately respond to a motion for summary judgment, nothing prevents the Court from exercising its discretion to conduct such a review." (internal citation omitted)).

"The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). In fact, "[t]he Eighth Amendment requires prison officials 'to take reasonable measures to guarantee the safety of the inmates.'" *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). That obligation includes "provid[ing] medical care for those whom [the government] is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

"[T]o establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (second alteration in original) (quoting *Estelle*, 429 U.S. at 104). "This standard incorporates both objective and subjective elements." *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently capable state of mind." *Id.* at 183-84.

A serious medical need is one that, if left untreated, "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (internal quotation marks and citation omitted). Deliberate indifference, on the other hand, is "more than negligence, but less than conduct taken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "More specifically, a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Further, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim[;] [s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. In fact, "negligence, even if it constitutes medical practice, does not, without more, engender a constitutional claim." *Id.* (citing *Estelle*, 429 U.S. at 105-06); *see Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("Disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention . . . implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." (citing *Estelle*, 429 U.S. at 107)).

In this case, the Court assumes, without deciding, that Plaintiff's medical problems were sufficiently serious for purposes of his Eighth Amendment deliberate indifference claims. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *McMillon v. Davidson*, 873 F. Supp. 2d 512, 514 (W.D.N.Y. 2012). But, as set forth below, there is no genuine issue of material fact as to whether Defendants knew of and disregarded an excessive risk to his health or safety.

A.      <u>Salotti</u>

Plaintiff alleges that Salotti was deliberately indifferent to his serious medical needs when she: (1) failed to provide him with his necessary pain medication, knee brace, back brace, and bottom bunk permit; and (2) failed to properly diagnose and treat his shoulder and head injuries after he fell into the shower. (*See* Dkt. 6 at ¶¶ 25, 31-34). Defendants respond that, to the extent Plaintiff had any serious medical needs, Salotti provided appropriate treatment, and "[a]t best, Plaintiff disagrees with the treatment he was given." (*See* Dkt. 68-4 at 9-11).

When Plaintiff first arrived at Five Points in July of 2016, Salotti determined that Plaintiff had "no medical need for a knee brace, back brace, or bottom bunk permit." (*See* Dkt. 68-2 at ¶ 24). Salotti explained that Plaintiff's use of braces "would have been counter-productive at the time," and she believed that Plaintiff's "unnecessary long-term use of a knee brace [might] cause atrophy of the muscles around [his] knee." (*Id.* at ¶ 30; *see* Dkt. 19-1 at 45). Salotti did continue Plaintiff's pain medication, and she eventually issued him a bottom bunk permit on October 28, 2016. (*See* Dkt. 19-1 at 45; Dkt. 19-2 at 44).

Plaintiff has not submitted any evidence suggesting that Salotti's decision not to prescribe him a knee brace or a back brace was based on anything other than her medical judgment that these treatments were unnecessary. *See, e.g.*, *Evan v. Manos*, 336 F. Supp. 2d 255, 263 (W.D.N.Y. 2004) ("There is no medical evidence that a back brace was medically called for or that it would have relieved plaintiff's alleged pain."). The fact that Plaintiff received those devices at Downstate and Sing Sing does not establish that they

were medically necessary. *See Abreu v. Farley*, No. 6:11-CV-06251 EAW, 2019 WL 1230778, at *10 (W.D.N.Y. Mar. 15, 2019); *Gillespie v. N.Y. State Dep't of Corr. Servs.*, No. 9:08-CV-1339 (TJM/ATB), 2010 WL 1006634, at *6 (N.D.N.Y. Feb. 22, 2010). Nor does the fact that Plaintiff eventually fell into the shower and sustained injuries requiring further treatment. *See, e.g.*, *Quezada v. Poole*, No. 06-CV-228S, 2011 WL 4368450, at *4 (W.D.N.Y. Sept. 19, 2011) (concluding that a health care provider's failure to provide an incarcerated individual with a bottom bunk permit did not constitute deliberate indifference, even though the individual fell from his top bunk and was injured). As such, Salotti's decision to not prescribe Plaintiff a knee brace or back brace, even if it rose to the level of negligence (and the Court does not make the conclusion), did not rise to the level of deliberate indifference.

Similarly, there is no evidence that Salotti was deliberately indifferent to Plaintiff's medical needs after his fall into the shower. The fact that Salotti initially pursued non-surgical treatment options for Plaintiff's left shoulder, following Plaintiff's unremarkable x-ray, does not suggest that Salotti was deliberately indifferent. *See Bryant v. Wright*, 451 F. App'x 12, 14 (2d Cir. 2011) ("The bare allegation that the treatments have so far been unsuccessful is insufficient to state a claim for deliberate indifference."); *see also Douglas v. Stanwick*, 93 F. Supp. 2d 320, 325 (W.D.N.Y. 2000) ("Not every physician will treat every ailment in exactly the same manner[;] [t]hat does not mean that one of the physicians must be acting with deliberate indifference to the patient's needs."). And, once Plaintiff had surgery on his left shoulder, he was provided with physical therapy as prescribed by Dr. Setter. While Plaintiff has complained that his physical therapy did not begin for 36

days after the surgery, the record shows that on February 7, 2018, he indicated that he was not ready to attend physical therapy because he still had stitches in his shoulder. (Dkt. 68-2 at 58). Moreover, there is no evidence in the record that Salotti was responsible for any delay in providing Plaintiff with physical therapy, or for any failure by corrections officers to take him to his scheduled physical therapy appointments.

Further, when Plaintiff began complaining of migraine headaches, Salotti prescribed medication and ordered an MRI of his brain, which ultimately showed "[n]o evident abnormality." (*See* Dkt. 19-1 at 99-100; Dkt. 68-2 at ¶ 40). No reasonable juror could conclude that Salotti was deliberately indifferent to Plaintiff's claimed migraines.

In sum, there is no evidence that Salotti's "choice of treatment was intentionally wrong and did not derive from sound medical judgment." *Chance v. Armstrong*, 143 F.3d 698, 704 (2d Cir. 1998); *see also Benitez v. King*, 298 F. Supp. 3d 530, 537-38 (W.D.N.Y. 2018). Plaintiff consistently received treatment from Salotti before and after his fall into the shower, and there is no evidence that this treatment was so inappropriate or inadequate as to amount to deliberate indifference. As such, Salotti is entitled to summary judgment on Plaintiff's claim against her.

### B. **Remaining Defendants**

Defendants believe that they are entitled to summary judgment on Plaintiff's remaining claims on personal involvement grounds. (*See* Dkt. 68-4 at 5-7). Defendants argue that Plaintiff has failed to establish the personal involvement of Wilson and Coleman because those two individuals were not "involved in medical decisions regarding [Plaintiff's] treatment." (*See id.* at 7). And they further argue that Plaintiff has failed to

establish the personal involvement of Burnett or Rinere because he makes no factual allegations against them in his amended complaint. (*See id.*). Although Defendants' argument regarding Burnett and Rinere is technically incorrect (*see* Dkt. 6 at ¶¶ 22, 26), they nevertheless are entitled to summary judgment.

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). A plaintiff "must demonstrate that the challenged conduct was 'committed by a person acting under color of state law,' and 'deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Jie Yin v. NFTA*, 188 F. Supp. 3d 259, 268-69 (W.D.N.Y. 2016) (alteration in original) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). But a plaintiff cannot rely on a *respondeat superior* theory of liability, *see Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), and "must directly plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution,'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

1. **Wilson and Coleman**

Plaintiff alleges that Wilson and Coleman were deliberately indifferent because they responded to letters that he sent to Five Point's medical department yet failed to take any action to ensure that he received physical therapy for his left shoulder. (*See* Dkt. 6 at ¶¶ 36-37). The letters from Wilson and Coleman were responses to Plaintiff's attempts to file grievances directly with the IGRC. (*See, e.g.*, Dkt. 19-2 at 49-50). Both letters advised

Plaintiff that incarcerated individuals are not permitted under DOCCS Directive # 4040 to file grievances directly with the IGRC and recommended that Plaintiff "continue to bring [his] medical concerns to the attention of the [Five Points] healthcare staff using the existing sick call procedure." (*See id.* at 67-68).

Simply put, the letters from Wilson and Coleman are not evidence of deliberate indifference because those letters did not purport to make any treatment decisions but instead encouraged Plaintiff to follow the proper grievance and sick call procedures. *See, e.g.*, *Collier v. Harter*, No. 04-CV-6514-CJS, 2012 WL 1495366, at *10 (W.D.N.Y. Apr. 27, 2012) ("Augustin's alleged act in refusing to place Plaintiff's myelogram approval letter in his inmate medical file . . . is not sufficient to state a claim of deliberate indifference because the request is unrelated to the adequacy of the medical treatment. . . ."). What is more, as DOCCS Regional Health Service Administrators, Wilson and Coleman were entitled to rely on the medical judgments of Salotti and the rest of Five Points' medical staff. *See Graham v. Wright*, No. 01 Civ. 9613 NRB, 2003 WL 22126764, at *1 (S.D.N.Y. Sept. 12, 2003) ("It is well established that supervisory officials are 'generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment.'" (quoting *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 183 (N.D.N.Y. 1996)). For those reasons, Plaintiff's claims against Wilson and Coleman cannot survive summary judgment.

### 2. Burnett

Plaintiff alleges that Burnett was deliberately indifferent when she failed to respond to a letter that he sent to her on January 2, 2017, inquiring about the denials of his knee and

back braces. (*See* Dkt. 6 at ¶ 26). Plaintiff's letter fails to establish that Burnett was deliberately indifferent to his serious medical needs.

"A supervisory official, after learning of [a constitutional] violation through a report or appeal, may [be liable for] fail[ing] to remedy the wrong." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). But "[c]ourts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).

Here, Plaintiff's letter, addressed simply to a "Nurse Administrator," did not allege a constitutional deprivation by any member of Five Points' medical staff or explain the serious medical need for a knee brace or a back brace. (*See* Dkt. 19-2 at 18). Instead, Plaintiff asserted in the letter that he "ha[d] information pertaining to this issue, proving that this issue . . . was addressed in [his] previous facility." (*See id.* (cleaned up)). That letter does not show that Burnett's "failure to act . . . evince[d] a conscious disregard of a substantial risk of serious harm." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citation omitted). Burnett therefore is entitled to summary judgment.

### 3. Rinere

Finally, Plaintiff alleges that Rinere was deliberately indifferent when she sent him a letter denying his written request for a knee brace, back brace, pain medication, and a bottom bunk permit. (*See* Dkt. 6 at ¶ 22). Plaintiff's claim against Rinere cannot survive summary judgment for three reasons.

First, Plaintiff has not provided a copy of the written request for treatment, so "[t]here is no evidence that [Rinere] knew of and disregarded 'an excessive risk' to [his] 'health or safety.'" *See Veloz v. New York*, 339 F. Supp. 2d 505, 526 (S.D.N.Y. 2004) (quoting *Farmer*, 511 U.S. at 837); *see also Mangual v. Wright*, No. 05-CV-6356 CJS, 2007 WL 1428443, at *7 (W.D.N.Y. May 9, 2007) (awarding summary judgment on personal involvement grounds where, "[s]ignificantly, the letter that plaintiff allegedly sent [was] not part of the record, so the Court [did] not know exactly what plaintiff allegedly stated to Wright").

Second, the letter from Rinere does not deny Plaintiff's request but rather establishes that the request had already been denied by Salotti, Plaintiff's provider, on July 22, 2016. (*See* Dkt. 19-2 at 15-16; *see also* Dkt. 19-1 at 47-48). And Plaintiff does not provide any evidence that Rinere, as a sick call nurse, had the authority to override Salotti's treatment decisions. *See, e.g.*, *Ippolito v. Goord*, No. 05-CV-6683 (MAT), 2012 WL 4210125, at *7 (W.D.N.Y. Sept. 19, 2012) (granting summary judgment on personal involvement grounds where, "[i]n his capacity as a physician's assistant, Edwards did not have the authority to override Dr. Wright and order that Rebetron therapy be administered to Ippolito"); *Smith v. Woods*, No. 9:05-CV-01439 (LEK/DEP), 2008 WL 788573, at *9 (N.D.N.Y. Mar. 20, 2008) ("Plaintiff, however, has provided no evidence suggesting that defendant Amberman . . . or defendant Crosier . . . had any authority to override the decision of OMH psychiatrist Dr. Wurzberger regarding the prescribed medication.").

Third, and as discussed at length above, there is no evidence in the record that Salotti's treatment decisions were medically inadequate, such that Rinere should have

overridden them even if she had such authority. In other words, like Salotti, there is no evidence that Rinere's decisions were based on anything other than her medical judgment as to the appropriate treatment for Plaintiff's conditions.

As such, Rinere is entitled to summary judgment on Plaintiff's deliberate indifference claim.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Dkt. 68) is GRANTED. The Clerk of Court is directed to terminate Kristin M. Salotti, Jessica B. Burnett, Karen Rinere, Luci Wilson, and Mary J. Coleman as defendants in this action. The Court will enter a separate Order addressing Plaintiff's claims against the unserved defendants.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      August 21, 2024
            Rochester, New York